LAURA C. BASFORD
D. ALLEN DRESCHEL
(Each appearing pursuant to General Order (Amended) No. 20-003)
600 Pennsylvania Ave., NW., CC-8528
Washington, D.C. 20580
lbasford@ftc.gov   Telephone: (202) 326-2343
ddreschel@ftc.gov   Telephone: (202) 326-2531
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

FILED
2020 NOV 30 PM 1:46
CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Plaintiff,<br><br>                v.<br><br>NATIONAL WEB DESIGN, LLC, a Wyoming limited liability company,<br><br>B2B WEBSITE DESIGN, LLC, also d/b/a Affiliate Web Design, a Delaware limited liability company,<br><br>AMAZON AFFILIATE PROGRAM, LLC, also d/b/a The Affiliate Consultants, a Delaware limited liability company,<br><br>R&C CONSULTATION, LLC, also d/b/a R&C Consulting, a Delaware limited liability company, and<br><br>RANDON J. MORRIS, a/k/a Randy Morris, individually and as a member or manager of NATIONAL WEB DESIGN, LLC, B2B WEBSITE DESIGN, LLC, AMAZON AFFILIATE PROGRAM, LLC, and R&C CONSULTATION, LLC,<br><br>        Defendants. | Case Number : _____<br><br>**FILED UNDER SEAL PURSUANT TO COURT ORDER (DOCKET NO.        )**<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**    Case: 2:20−cv−00846<br>        Assigned To : Campbell, Tena<br>        Assign. Date : 11/30/2020<br>        Description: Federal Trade Commission v. National Web Design et al |

1

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6105, to obtain preliminary and permanent injunctive relief, rescission or reformation of contracts, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Telemarketing Sales Rule ("TSR" or "Rule"), as amended, 16 C.F.R. Part 310.

## SUMMARY OF ALLEGATIONS

2.      Defendants telemarket work-from-home business opportunities, including an Amazon affiliate business opportunity, to consumers throughout the United States. To carry out the scheme, Defendants blast out millions of illegal robocalls that promote their offers to consumers. Defendants falsely claim to be an Amazon vendor and promise consumers will make thousands of dollars a month working as affiliates of Amazon through the Amazon Associates Program. After charging consumers hundreds or thousands of dollars for a website and advertising campaign to promote the website, Defendants provide a defective website and fail to put an effective advertising program into practice.

3.      Purchasers of Defendants' business opportunities are left with a worthless website and none of the promised income. When they try to contact Defendants, Defendants ignore their calls and emails and refuse to provide refunds.

4.      When the novel coronavirus disease (COVID-19) outbreak began, Defendants modified their robocall message to appeal to consumers concerned about the health risks of working outside the home. And Defendants offered coronavirus "promotions" to target consumers who recently lost their job or suffered a loss of income due to the pandemic.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(1) and 15 U.S.C. § 53(b).

## PLAINTIFF

7.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41–58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

8.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 15 U.S.C. § 57b, and 6105(b).

**DEFENDANTS**

9.      Defendant National Web Design, LLC is a Wyoming limited liability company with its principal place of business at 512 Robin Road, Orem, Utah, 84097. National Web Design, LLC transacts or has transacted business in this District and throughout the United States.

10.      Defendant B2B Website Design, LLC, also d/b/a Affiliate Web Design, is a Delaware limited liability company with its principal place of business at 512 Robin Road, Orem, Utah, 84097. B2B Website Design, LLC transacts or has transacted business in this District and throughout the United States.

11.      Defendant Amazon Affiliate Program, LLC, also d/b/a The Affiliate Consultants, is a Delaware limited liability company with its principal place of business at 512 Robin Road, Orem, Utah, 84097. Amazon Affiliate Program, LLC transacts or has transacted business in this District and throughout the United States.

12.      Defendant R&C Consultation, LLC, also d/b/a R&C Consulting, is a Delaware limited liability company with its principal place of business at 512 Robin Road, Orem, Utah, 84097. R&C Consultation, LLC transacts or has transacted business in this District and throughout the United States.

13.      Defendant Randon J. Morris, also known as Randy Morris ("Morris"), is a member or manager of National Web Design, LLC, B2B Website Design, LLC, Amazon Affiliate Program, LLC and R&C Consultation, LLC. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of National Web Design, LLC, B2B Website

4

Design, LLC, Amazon Affiliate Program, LLC and R&C Consultation, LLC, including the acts and practices set forth in this Complaint. Defendant Morris resides in this District, at 512 Robin Road, Orem, Utah, 84097, and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

## COMMON ENTERPRISE

14.     Defendants National Web Design, LLC, B2B Website Design, LLC, Amazon Affiliate Program, LLC and R&C Consultation, LLC (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged below. The Corporate Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership and business functions, are managed by the same individual, and are located in the same place. The Corporate Defendants have also commingled funds, used the same methods to solicit consumers, and sold consumers the same purported work-from-home business opportunities. Because the Corporate Defendants have operated as a common enterprise, each of them is liable for the acts and practices alleged below.

15.     Defendant Randon J. Morris has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

16.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

### DEFENDANTS' BUSINESS ACTIVITIES

17.    Beginning no later than 2015, and continuing thereafter, Defendants have deceptively telemarketed a home-based internet business opportunity to consumers throughout the United States.

18.    Defendants first contact consumers via "robocalls"—telephone calls that consist of prerecorded voice messages. Defendants have initiated millions of robocalls to households throughout the United States.

19.    Defendants' robocalls state that consumers can obtain a work-from-home position with the Amazon Associates Program and make hundreds of dollars a day. The robocalls then invite consumers to call a phone number to learn more.

20.    For example, in January and February 2020, Defendants sent out robocalls with the following message:

> Hello, this is a courtesy invitation to work with Amazon from home and make up to $400.00 in a day. Open enrollment has begun for the Amazon Associate Program. The program allows you to partner with Amazon and share in their success as a referral partner. Everyone over 18 qualifies, no sales or technical experience are needed. Work from home, you set your own schedule. To learn more about partnering with Amazon call the Amazon hotline at 360-203-1731. Spaces are limited so please call now, 360-203-1731, that's 360-203-1731. Thank you.

21.    Defendants purport to be part of or affiliated with Amazon in this robocall message, referring to the "Amazon Associate Program" and their phone number as the "Amazon hotline." The message also creates a sense of urgency by falsely claiming that "spaces are limited" and referring to a fabricated "open enrollment" period for the program.

6

22.     When the coronavirus outbreak began, Defendants modified their robocall message to target consumers who were concerned about the health risks of working outside their homes, due to the pandemic. The Defendants sent out robocalls with the following message shortly after the COVID-19 pandemic began:

> This is a call regarding the Amazon Associate Program. Amazon recognizes the health concerns concerning the coronavirus. Amazon is offering you an opportunity to work from home as an Associate member and make up to $400 a day. No experience of any kind is necessary. Training will be provided. To learn more and see if you qualify please call our automated line at 279-333-8313. Please press 9 now if you wish to be placed on the do not call list.

23.     In this robocall message, Defendants again purport to speak on Amazon's behalf, representing that Amazon recognizes health concerns related to the pandemic and framing Defendants' Amazon Associate Program as an offer that comes directly from Amazon.

24.     More recently, Defendants sent out robocalls with the following message between May and September 2020:

> Hello, this is an automated invitation to partner with Amazon as an official Amazon affiliate making 300 dollars a day. Work from home, complete flexibility, no set schedules, no experience of any kind is needed. All ages are welcome. Positions are limited. Call now, 213-712-8388. Again, 213712838. Thank you.

25.     Consumers who call the phone number provided in the robocall message are prompted to leave a message with their contact information. Defendants' telemarketers return those calls and pitch the work-from-home business opportunities.

26.     During these sales calls, Defendants, in numerous cases, represent that they are an Amazon vendor. Defendants' telemarketers typically ask consumers to view a video online. Sometimes the telemarketers text a link to the video to the consumer after ending the call with

the consumer. Sometimes the telemarketer waits on the line while the consumer views the video. The video deceptively conflates Amazon and Defendants. For example, as reflected in the image directly below, one portion of the video states "what Amazon will do for you," and then goes on to explain that "we [i.e., Defendants] will enroll you" in the Amazon Associates program:



27.     After consumers watch the video, the telemarketers call them back or, if the consumers stayed on the phone while viewing the video, the telemarketers continue their phone call. The telemarketers offer to create a website for consumers linked to Amazon.com, claiming that consumers will receive substantial income in commissions on Amazon purchases made through the website.

28.     Recently, Defendants have offered "promotions" on the costs of their websites, due to the coronavirus pandemic.

29.     Relying on Defendants' representations, consumers pay Defendants from $200 to $400 by a variety of means, including personal and cashiers' check, credit and debit card.

30.     In some instances, and only after consumers pay Defendants for their websites, they receive an email with the following statement:

> Please note that we are NOT Amazon.  We do not state we are affiliated directly with Amazon.  We are working as a vendor to offer the required services necessary (Website and Hosting) to participate in the Amazon Affiliate Program.  Again, we are building, hosting and linking your website that allows you to be an Amazon, HSN or iTunes Affiliate Member.   A comparison of this would be that McDonalds does not raise their own cattle, they have "vendors" who provide the cattle they use for their hamburgers.   Those that provide the cattle are not "McDonalds" but they play a critical role for McDonalds.  We are acting like the cattle vendor for Amazon by providing  a service (building and hosting websites) that Amazon themselves do not offer, but nevertheless a service that is required in order to participate in the Amazon, HSN or iTunes Affiliate Programs.

This unusual statement, which is in a smaller font than the rest of the email, does not cure Defendants' misrepresentations about their affiliation with Amazon. Instead, the statement falsely likens Defendants' relationship to Amazon to a cattle vendor who is in a contractual business relationship with McDonalds. Defendants have no such relationship with Amazon.

31.     After consumers purchase the website, Defendants call and email consumers and tell them they should contact an "Advertising Counselor" or "Associate Website Counselor," to assist them with their website. The "counselor" is in reality just another telemarketer for the Defendants.

32.     When consumers make an appointment with the "Counselor," the appointment webpage states that Defendant National Web Design is a "Preferred Vendor" with Amazon.

33.     When consumers speak with the so-called "Counselors," the telemarketers represent that they are affiliated with Amazon. The telemarketers also represent that consumers will make thousands of dollars a month if they purchase one of the advertising campaigns that Defendants sell.

34.     Defendants represent that, as part of these advertising campaigns, Defendants will create blog posts and social media accounts to drive customers to the consumers' Amazon affiliate websites.

35.     In numerous cases, consumers also receive written guarantees from Defendants promising that they will receive thousands of dollars in income per month if they purchase one of Defendants' advertising campaigns. For example, Defendants provided the following written guarantee to a consumer in October 2019:

**OUR GUARANTEE:**
National Web Design guarantees you that this campaign will generate an average monthly commission of $6,000.00 per month, for ten (10) months. If these numbers are not met or exceeded, we will rerun the entire campaign again within 5 business days, for FREE, regardless of how small the shortfall amount is. By signing this Guarantee below, you confirm that all products and digital goods purchased, said advertising above, has been delivered in full and as described.

36.     Defendants charge consumers anywhere from several hundred dollars to thousands of dollars for their purported advertising campaigns. Relying on these representations, consumers pay Defendants' fee, generally by personal check.

37.     In reality, Defendants are not part of or affiliated with Amazon.

38.     Nor do Defendants' websites generate thousands of dollars per month in income for Defendants' customers. Consumers who have paid hundreds, and in many cases thousands, of dollars based on Defendants' assurances of substantial income, typically, if not always, receive no income from the websites or advertising campaigns.

39.     In numerous cases, critical features of the websites produced by Defendants do not function properly. For example, the websites feature products for purchase, but they do not contain links to the Amazon website where someone could actually purchase those products.

10

And the websites are typically cookie-cutter replicas of each other; with no unique branding or content to attract visitors, which is necessary to generate the income that Defendants promise.

40. Furthermore, to the extent that Defendants even attempt to produce the advertising campaigns they sell to consumers, such campaigns fail to drive customers to consumers' websites, let alone generate thousands of dollars per month in commissions from Amazon.

41. In numerous instances, when consumers call to complain that their website does not work, or that they have made no money with the website or the advertising campaign, Defendants ignore their calls and emails and fail to refund the consumers' money.

42. Defendant Morris operates the Corporate Defendants out of his home in Orem, Utah. He opened bank accounts for each of the Corporate Defendants, and he has control and signatory authority over bank accounts maintained by the Corporate Defendants.

43. Morris opened accounts with multiple Voice over Internet Protocol or "VoIP" providers that the scheme used to initiate robocalls. Since March 2020, two VoIP providers terminated the relevant accounts and informed Morris that they did so because of consumer complaints about robocalls that appeared to come from Amazon.

44. Morris responded to numerous complaints and refund requests submitted by consumers who purchased the Proposed Defendants' services through PayPal, a payment processor.

45. Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission. Among other things, Defendants have engaged in their unlawful acts and practices

11

repeatedly over a period of five years, including initiating robocalls as recently as October 26, 2020. Defendants continued their unlawful acts or practices despite knowledge of numerous consumer complaints and after two VoIP providers terminated Defendants' accounts because of Defendants' unlawful conduct.

## VIOLATIONS OF THE FTC ACT

46.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

47.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I – MISREPESENTATIONS REGARDING EARNINGS

48.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Defendants' work-from-home business opportunities, Defendants represent, directly or indirectly, expressly or by implication, that consumers who purchase Defendants' work-from-home business opportunities will, or are likely to, earn substantial income.

49.     The representations set forth in Paragraph 48 of this Complaint are false or were not substantiated at the time the representations were made.

50.     Therefore, Defendants' representations as set forth in Paragraph 48 are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

12

**COUNT II – MISREPESENTATIONS REGARDING DEFENDANTS' AFFILIATION**

51.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Defendants' work-from-home business opportunities, Defendants represent, directly or indirectly, expressly or by implication, that Defendants are part of or affiliated with Amazon.

52.     In truth and in fact, Defendants are not part of or affiliated with Amazon.

53.     Therefore, Defendants' representations as set forth in Paragraph 51 are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

54.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108, in 1994. The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain sections thereafter. 16 C.F.R. Part 310.

55.     The TSR defines "outbound telephone call" to mean "a telephone call initiated by a telemarketer to induce the purchase of goods or services ...." 16 C.F.R. § 310.2(x).

56.     The TSR defines "telemarketer" to mean "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer ..." 16 C.F.R. § 310.2(ff).

57.     The TSR defines "telemarketing" to mean "a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one

or more telephones and which involves more than one interstate telephone call." 16 C.F.R. § 310.2(gg).

58. The TSR defines "person" to mean "any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity." 16 C.F.R. § 310.2(y).

59. The Defendants are "telemarketers" engaged in "telemarketing," as defined by the TSR, 16 C.F.R. § 310.2(ff) and (gg).

60. The TSR prohibits telemarketers from initiating an outbound telephone call that delivers a prerecorded message to induce the sale of goods or services. 16 C.F.R. § 310.4(b)(1)(v).

61. The TSR prohibits sellers and telemarketers from "[m]isrepresenting, directly or by implication, in the sale of goods or services ... [a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer." 16 C.F.R. § 310.3(a)(2)(iii).

62. The TSR prohibits sellers and telemarketers from "[m]isrepresenting, directly or by implication, in the sale of goods or services … [a] seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity." 16 C.F.R. § 310.3(a)(2)(vii).

63. The TSR prohibits sellers and telemarketers from "[m]aking a false or misleading statement to induce any person to pay for goods or services ...." 16 C.F.R. § 310.3(a)(4).

64. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an

unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT III – UNLAWFUL PRERECORDED MESSAGES OR ROBOCALLS

65.     In numerous instances, in connection with the telemarketing of Defendants' work-from-home business opportunities, Defendants initiate or cause the initiation of outbound telephone calls that delivered prerecorded messages to induce the purchase of goods or services, in violation of 16 C.F.R. § 310.4(b)(1)(v).

### COUNT IV – DECEPTIVE TELEMARKETING – EARNINGS CLAIMS

66.     In numerous instances, in connection with the telemarketing of Defendants' work-from-home business opportunities, Defendants misrepresent, directly or indirectly, expressly or by implication, material aspects of the performance, efficacy, nature, or central characteristics of Defendants' work-from-home business opportunities, including that consumers who purchase Defendants' services will, or are likely to, earn substantial income.

67.     The acts and practices of Defendants described in Paragraph 66 are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.3(a)(2)(iii) and (a)(4).

### COUNT V – DECEPTIVE TELEMARKETING – AFFILIATION CLAIMS

68.     In numerous instances, in connection with the telemarketing of Defendants' work-from-home business opportunities, Defendants misrepresent, directly or indirectly, expressly or by implication, that Defendants are part of or affiliated with Amazon.

69.     The acts and practices of Defendants described in Paragraph 68 are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.3(a)(2)(iii),(vii) and (a)(4).

15

## CONSUMER INJURY

70.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

71.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

72.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the Telemarketing Act, including the rescission or reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b), 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A.    Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including temporary and preliminary injunctions and an order freezing assets;

B.    Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by the Defendants;

C.    Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the TSR, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.    Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

Dated:    November 30, 2020

Laura C. Basford
D. Allen Dreschel
Federal Trade Commission
600 Pennsylvania Ave., NW., CC-8528
Washington, D.C. 20580
lbasford@ftc.gov    Telephone: (202) 326-2343
ddreschel@ftc.gov    Telephone: (202) 326-2531

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

17